**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS EDWARD PORTER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 05-291 |
| | ) |
| COMMONWEALTH OF PENNSYLVANIA, | ) |
| et al., | ) |
| | ) Judge Arthur J. Schwab |
| Respondents. | ) |
| | ) Magistrate Judge |
| | ) Francis X. Caiazza |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is recommended that the Petition for Writ of Habeas
Corpus filed by Thomas Edward Porter pursuant to the provisions
of 28 U.S.C. § 2254 be denied. Also, it is recommended that a
Certificate of Appealability be denied.

**II. REPORT**

The Petitioner, Thomas Edward Porter ("Porter" or
"Petitioner"), is a state prisoner incarcerated at the State
Correctional Institution at Greensburg, Pennsylvania. Presently
before this Court is his Petition for Writ of Habeas Corpus filed
pursuant to 28 U.S.C. § 2254. (Doc. 1).

**A.   Relevant Factual and Procedural Background**

At trial, the Commonwealth presented evidence to establish
that on September 6, 1999, Porter knocked on the door of the home

1

of Morris Blick ("Blick"), located at 928 Ravine Street, McKeesport, Pennsylvania. (Trial Tr. at 37). Blick, aged eighty-seven, testified that he knew Porter because Porter had previously performed yard work for him. (Id. at 69). Blick immediately recognized Porter through the door window and told him to go away. (Id. at 37). Soon thereafter Blick testified that he heard noises coming from his bathroom. (Id. at 41). When he investigated, he saw that Porter had broken through the bathroom window. (Id. at 37-41). Porter threw Blick against the bathtub and then went into his bedroom and stole his wallet. (Id. at 41). He exited the home through the front door. (Id. at 42).

Blick immediately called an ambulance and was transported to the hospital. (Id.) In an interview soon thereafter with Officer Thomas West of the McKeesport Police Department, Blick reported that Porter was the perpetrator of the crime. (Id. at 51, 77-79). He explained to Officer West that he knew Porter, that he recognized him immediately, and that he lived on Evans Avenue. (Id. at 49-51, 76-77). Blick also described Porter as a black male wearing "nylon type pants" and a green tank top. (Id. at 76).

McKeesport Police Officer Dan Rich testified that while on his shift during the early-morning hours of September 6, 1999, he observed a black male running near Ravine Street wearing dark nylon pants and a tank top. (Id. at 97-98). Officer Rich stated

2

that he got a "good look" at the individual because he stopped at a corner and then walked across the street in front of his patrol car. (Id.). Approximately four minutes after observing this individual, Officer Rich received a call reporting the incident at Blick's home. (Id.). The description of the perpetrator matched that of the man Officer Rich had just observed. (Id.).

Sergeant Mark Holtzman testified that around 3:00 a.m. the same morning, he was responding to an unrelated call on Evans Avenue when he saw Porter. (Id. at 124). Sergeant Holtzman knew Porter and told him that an investigation into a Ravine Street robbery was underway and he was a suspect. (Id. at 127). Sergeant Holtzman also radioed Officer Rich, who arrived at the scene shortly thereafter and identified Porter as the man he had seen near Ravine Street earlier that morning. (Id. at 99).

At approximately 11:00 a.m., Officer Thomas Greene showed Blick a photo array. Officer Greene testified that Blick immediately identified the photo of Porter and said "this is the guy that did this to me." (Id. at 140).

Porter was arrested and charged with burglary and robbery. He was initially represented by Kathleen Miskovich-Marx of the Office of the Public Defender. On March 6, 2000, Attorney Miskovich-Marx filed a Petition for Leave to Withdraw as Counsel. She stated that one of Porter's defenses at trial would be that an individual by the name of Kristian Hodge was the perpetrator

3

of the crimes he purportedly committed. Because the Office of the Public Defender represented Hodge, a conflict of interest existed. The trial court granted the petition and appointed Steven Tabano, Esquire, to represent Porter.

Porter did not call any witnesses in his defense at trial. (Trial Tr. Id. at 192-212). Instead, Tabano attempted to discredit Blick's identification of Porter through cross-examination. Blick remained steadfast that Porter was the perpetrator of the crimes. (Id. at 70-72). The defense also sought to create reasonable doubt in the minds of the jurors by eliciting testimony from Officer Greene on cross-examination that Kristian Hodge was arrested and convicted for a December 1999 burglary in which the point of entry was the bathroom window and the victim was an elderly man. (Id. at 176-78). Officer Greene explained on redirect examination that Hodge was never a suspect in the Blick crime investigation because of the strong evidence that pointed to Porter as well as the fact that Porter and Hodge do not resemble each other physically. (Id. at 173, 178-83).

On December 8, 2000, the jury convicted Porter of robbery and burglary. On March 29, 2001, the trial court sentenced him to consecutive sentences of forty-eight to ninety-six months at the burglary conviction and ninety-six to 192 months at the robbery conviction. (Sentencing Tr. at 13).

4

**B.   Legal Analysis**

**(1)   Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), Pub. L. No. 104-132 § 104, 110 Stat. 1214, restricts a

federal court's authority to grant relief when a state court has

previously adjudicated and rejected the petitioner's federal

constitutional claims. 28 U.S.C. § 2254(d). It provides, in

relevant part:

> An application for a writ of habeas corpus on behalf of
> a person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim
> that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State Court proceeding.[1]

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362,

405-06 (2000); Price v. Vincent, 538 U.S. 634, 641 (2003);

---

[1]  Within § 2254(d)(2)'s overarching standard, a petitioner may attack
specific factual determinations that were made by the state court and
that are subsidiary to the ultimate decision.  See 28 U.S.C.
§ 2254(e)(1); Lambert v. Blackwell, 387 F.3d 210, 235 (3d Cir. 2004);
see also Miller-El v. Dretke, 125 S.Ct. 2317 (2005).Section 2254(e)(1)
instructs that the state court's determination must be afforded a
presumption of correctness that the petitioner can rebut only by clear
and convincing evidence.  Id. A petitioner may attempt to develop
clear and convincing evidence by way of a hearing in a state post-
conviction proceeding or a hearing in federal court (as long as he
satisfies the necessary prerequisites for that hearing found in 28
U.S.C. § 2254(e)(2)).

Lambert, 387 F.3d at 234.

In his federal habeas corpus petition, Porter raises numerous claims that he received ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights. (See Mem.[2] at 3). He presented these same claims to the Superior Court of Pennsylvania during the PCRA proceedings.[3] The Superior Court rejected each claim on the merits. (Ex.[4] 9). Thus, the only issue this Court must resolve is whether Porter has demonstrated that the Superior Court's adjudication of his PCRA claims resulted in a decision that is "contrary to" or "an unreasonable application of" "clearly established Federal law," or "was based on an unreasonable determination of the facts[.]" 28 U.S.C. § 2254(d)(1) & (2).

**(2)  Ineffective Assistance of Counsel Claims**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States held that in order to establish that counsel's service was constitutionally ineffective, a petitioner must demonstrate: (1) that counsel's performance was unreasonable; and (2) that the deficient

---

[2]  Porter's "Memorandum of Law in Support of Petition for Writ of Habeas Corpus by a Prisoner in State Custody" (cited herein as "Mem.") is attached to his petition (Doc. 1).

[3]  The Pennsylvania Post Conviction Relief Act, 42 Pa. Cons. Stat. § 8541, et seq.

[4]  All Exhibit citations are to documents attached to the Respondents' Answer (Doc. 7).

performance actually prejudiced the defense. See also Wiggins v. Smith, 539 U.S. 510, 521 (2003) and Williams, 529 U.S. at 390-91. To satisfy the first requirement of Strickland, the petitioner must establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the petitioner must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689, 690-92. The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the relevant time and place. Id. at 689.

To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; Wiggins, 539 U.S. at 532

a. The Withdrawl of the Motion to Dismiss and the Failure to file a Motion to Suppress.

On January 26, 2000, Attorney Miskovich-Marx filed a motion

7

contending that Porter's arrest was unconstitutional because there was no arrest warrant and there was no probable cause to arrest him. When Attorney Tabano assumed Porter's representation, he withdrew the motion. (Ex. 7 at 3).

In a letter, Attorney Tabano explained to Porter why the motion had no merit and withdrawal was appropriate. (Doc. 1, Oct. 31, 2000 letter). He stated that under Rule 101 of the Pennsylvania Rules of Criminal Procedure, "the police do not need a warrant to arrest you but simply require probable cause." (Id.). He further stated that: "the case law on this topic also clearly holds that when a defendant is held for court following a preliminary hearing probable cause for the arrest has been established." (Id.). Tabano concluded by informing Porter: "It is my opinion that there are no quick ways out of this case for you and that there are no legal irregularities justifying a dismissal of the charges. I anticipate that the case will be tried and the jury will decided your fate. This will be determined primarily on the testimony of Mr. Blick." (Id.).

In his first claim for habeas relief, Porter contends that Tabano's decision to withdraw the motion to dismiss amounted to constitutionally infirm representation under the standard set out in Strickland. (Mem. at 9). He also contends that Tabano provided him with ineffective assistance because he failed to file additional pre-trial motions to suppress the police officers'

8

testimonies based on his alleged false arrest and Blick's out-of-court identification of him. (Id. at 37-42).

In denying the claim regarding the motion to dismiss, the Superior Court held that the motion had no merit and it would have been denied had it not been withdrawn. (Ex. 9 at 3). The court rejected Porter's contention that there was no probable cause for arrest, noting that the affidavit of probable cause explained the details of the crime and Blick's identification of Porter as the perpetrator. (Id.).

The Superior court also denied relief with respect to Porter's contention that Tabano should have filed motions to suppress. It held that there was no merit to his contention that suppression motions would have been successful. (Id. at 6). Simply put, the court found that there were no viable grounds to challenge the admission of either the police officers' testimony or Blick's out-of-court identification.

Because counsel cannot be found to have acted unreasonably for failing to raise a meritless claim, the Superior Court denied relief. Strickland, 466 U.S. at 691 (the failure to pursue "fruitless" claims "may not be challenged as unreasonable"). The court also held that Porter was not prejudiced by Tabano's decision to withdraw the motion to dismiss. It stated: "Certainly, even if [Tabano] had challenged the arrest and was successful, [Porter] would have been promptly re-arrested based

on the ample probable cause the police possessed." (Ex. 9 at 4).

Next, Porter argues that Tabano's decision to withdraw the motion and his failure to file suppression motions resulted in a verdict "based on false and misleading information[.]" (Mem. at 12). The Superior Court dismissed this argument, stating that: "[W]hile an illegal arrest may trigger the suppression of evidence obtained thereafter, there was no evidence that was uncovered as a result of [Porter's] arrest in this case." (Ex. 9 at 3). As Tabano explained to Porter in his letter, the key evidence in this case was Blick's immediate identification of Porter as his attacker and his identification of Porter's picture from the photo array shown to him the same day of his attack. This information was gathered prior to Porter's arrest, as was Officer Rich's identification of Porter as the individual he saw running near Ravine Street soon after the crime at Blick's home was reported.

b. Counsel's Failure to Challenge the Criminal Complaint

Next, Porter takes issue with Tabano's decision not to challenge the criminal complaint because the information set out therein was gathered by one police officer (Officer Greene), but presented to the magistrate by another officer (Officer Daniel T. Wensel). ( Mem. at 13-20). He also claims that Magistrate Thomas's name was forged. In denying this claim, the Superior

10

Court determined that even assuming,[5] arguendo, that "something improper occurred in the filing of the affidavit," Tabano could not be found constitutionally ineffective because Porter was not prejudiced. (Ex. 9 at 4). The court stated once again that "even if we were to assume that something improper occurred in the filing of the affidavit, we would not have concluded that [Porter] was entitled to collateral relief. The record makes clear that any relief to which [he] may have been entitled for such an impropriety would have been fleeting as his re-arrest based on ample probable cause surely would have followed." (Id.).

c. The Motion to Quash Filed by the Public Defender

Porter's next claim centers upon a motion to quash filed by the Public Defender. (Mem. at 21-26). On March 6, 2000, the trial court granted the Public Defender's Office and Attorney Miskovich-Marx's petition for leave to withdraw as counsel. (Doc. 1, Mar. 6, 2000 Order). In the petition, counsel stated that

---

[5]  Respondents assert that nothing improper occurred in the filing of the affidavit. (Doc. 7 at 20). They explain that the certified record demonstrates that Magistrate Raymond Thomas signed the complaint and warrant as issuing authority and that he was sitting in night court for the Honorable Thomas Breletic. Respondents further explain that Magistrate Thomas also signed the affidavit of probable cause, indicating that he was the one who administered the oath to the affiant. They state that, contrary to Porter's assertion, there is no proof that his signature was forged. They contend that the certified record shows that Magistrate Thomas was sitting for Magistrate Breletic and signed the police complaint and warrant after Officer Wensel presented an affidavit of probable cause on information received from Officer Green. Petitioner then was arrested and given a preliminary arraignment by Magistrate Morrissey who was also sitting in night court. (Id.)

11

withdrawal was appropriate due to a conflict of interest. She explained that Porter's defense would aver that "the perpetrator of this offense is Kristian Hodge[,]" and that Hodge was represented by the Public Defender's Office. (Doc. 1, Pet. to Withdraw as Counsel).

After Tabano assumed Porter's representation, he filed a motion to compel production of evidence, in which he sought an order from the court directing the Public Defender to release "any and all information[,] investigative reports, notes of interviews and any other evidence relating to the investigation fo this matter by that office." (State Ct. R at 13). The Public Defender's Office objected to the defense's request and filed a motion to quash subponeas. (State Ct. R. at 14). The opening paragraph of that motion began: "AND NOW COMES, *the Defendant, Thomas E. Porter, through his counsel, M. Susan Ruffner, Public Defender of Allegheny County, and Kathleen E.S. Miskovich-Mark, Trial Counsel*, to file the within Motion to Quash[.]" (Id. (emphasis added)). The foregoing statement was obviously incorrect, as Miskovich-Mark and the Public Defender's Office had withdrawn as Porter's counsel in March of 2000.

Porter claims that Tabano provided him with ineffective assistance because he did not object to Attorney Miskovich-Mark and the Public Defender's Office allegedly filing the motion to quash on his behalf. (Mem. at 21-26). In rejecting this claim,

12

the Superior Court held that, although the Public Defender's
Office submitted the motion with an error in it, "[i]t is clear
from the record that the Public Defender was not acting in the
capacity of [Porter's counsel], but instead was acting on behalf
of [Kristian Hodge]. It is likewise clear that the trial court
was fully aware of the status of the parties." (Ex. 9 at 5). This
factual determination is supported by the record and Porter has
not rebutted it by clear and convincing evidence. 28 U.S.C.
§ 2254(d)(2) & (e)(1).

d. The Duration of Blick's Period of Hospitilation

Next, Porter faults Tabano for failing to object to Blick's
trial testimony that he spent fifteen days in the hospital after
his attack. (Mem. at 27-37). The Respondents concede that Blick's
testimony on that point was incorrect, and that he actually was
treated and released from the hospital the same day he was
attacked. (Doc. 7, Commw. Answer at 23). Nevertheless, it is
undisputed that Blick was injured during the perpetration of the
crimes, and that he had to move into his sister's home for two
months while he recovered from Porter's attack. (Trial Tr. at
47).

The Superior Court determined that Tabano's failure to
cross-examine Blick on his misstatement did not prejudice the
defense. (Ex. 9 at 5). Considering the overwhelming evidence of
his guilt, it determined that Porter cannot show that there is a

13

reasonable probability that, but for Blick's erroneous testimony regarding the length of his hospital stay, he would not been convicted of burglary and robbery.

Nor has Porter demonstrated that there is a reasonable probability that he would have received lesser sentences on his convictions had the erroneous testimony been corrected. Although the prosecutor referenced Blick's purported two-week hospital stay at the sentencing hearing, he also noted that Porter "has a lengthy criminal history, a prior record score of 11, including burglary, several felony 2's" and he referenced the victim's advanced age. (Sentencing Tr. at 12-13). Porter has not established that the inaccurate testimony regarding Blick's hospital stay resulted in the judge sentencing him to a harsher sentence than he otherwise would have but for Tabano's failure to correct Blick's inaccurate testimony.[6]

### (3). The State Court Resolution of Porter's Claims

Porter has failed to demonstrate that the Superior Court's adjudication of his ineffective assistance of counsel claims was "contrary to" Strickland. Although the Superior Court did not

---

[6] Porter also claims that the trial judge erred because he failed to explain on the record his reasons for sentencing him to the term in which he did "as required by Pa.R.Crim.P. Rule 704." (Mem. at 44). Claims based on errors of state law are not cognizable on federal habeas review. 28 U.S.C. § 2254(a) (A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); see e.g., Pulley v. Harris, 465 U.S. 37, 41 (1984); Riley v. Harris, 277 F.3d 261, 310 n. 8 (3d Cir. 2001).

cite Strickland in denying his claims, it did rely on
Pennsylvania cases that set forth an identical standard for
ineffectiveness. (Ex. 9 at 3-4 (citing Commonwealth v. Howard,
654 A.2d 1300, 1304 (Pa. 1994)); Werts v. Vaughn, 228 F.3d 178,
202-03 (3d Cir. 2000) (examining Pennsylvania ineffective
assistance law and determining that it is the same as the
Strickland standard). As the Williams Court explained, "a run-of-
the mill state-court decision applying the correct legal rule
from [Supreme Court] cases [does] not fit comfortably within
§ 2254(d)(1)'s 'contrary to' clause". Williams, 529 U.S. at 406.

    Porter likewise has failed to demonstrate that the Superior
Court's decision was an "unreasonable application"[7] of
Strickland, or that it "resulted in a decision that was based on
an unreasonable determination of the facts in light of the
evidence presented[.]" 28 U.S.C.§ 2254(d). As noted in its
decision, the pretrial motions that Porter wanted Tabano to
pursue (including the motion to dismiss, motions to suppress, and

---

[7]  The Supreme Court has explained that when analyzing a state court
decision under §2254(d)(1)'s "unreasonable application" clause:

    [A] federal habeas court may not issue the writ simply
    because that court concludes in its independent judgment
    that the state-court decision applied a Supreme Court case
    incorrectly. Rather, it is the habeas applicant's burden to
    show that the state applied that case to the facts of his
    case in an objectively unreasonable manner.

Price, 538 U.S. at 641 (quoting Bell v. Cone, 535 U.S. 685, 699
(2002); citing Williams, 529 U.S. at 411; Woodford v. Visciotti, 537
U.S. 19, 24-25 (2002)) (internal quotations, citations, and brackets
omitted).

15

a motion challenging the motion to quash), had no merit.
Likewise, Porter was not prejudiced by Tabano's complained-of
conduct. There was probable cause to arrest him, there were no
grounds upon which to challenge the introduction of the
Commonwealth's evidence, and there was ample evidence of his
guilt.

### (4). Challenges to the PCRA Proceedings

In his final claim, Porter contends that he is entitled to
habeas corpus relief because the PCRA court allegedly failed to
furnish him with the warrant of arrest, the criminal complaint,
the search warrant, transcripts, and certified copies of all
dockets during the PCRA proceedings. (Mem. at 43-44). Errors
concerning a state's post-conviction process are not cognizable
in a federal habeas petition. Hassine v. Zimmerman, 160 F.3d 941,
954 (3d Cir. 1998)("The federal role in reviewing an application
for habeas corpus is limited to evaluating what occurred in the
state or federal proceedings that actually led to the
petitioner's conviction; what occurred in the petitioner's
collateral proceeding does not enter into the habeas calculation.
. . . Federal habeas power is limited . . .to a determination of
whether there has been an improper detention by virtue of the
state court judgment.")(internal quotations omitted) and Nichols
v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995)("An attack on a
state habeas proceeding does not entitle the petitioner to

16

[federal] habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotations omitted).

## (5). Certificate of Appealability

Section 102 of AEDPA, 28 U.S.C. § 2253(c) (as amended), codifies standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Because Porter has not made such a showing, a certificate of appealability should be denied.

### III. CONCLUSION

It is recommended that, pursuant to 28 U.S.C. § 2244(b) and Rule 9 of the Rules Governing Habeas Corpus Cases Under Section 2254, that the Petition for Writ of Habeas Corpus be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

17

Francis X. Caiazza
United States Magistrate Judge

Dated: December __16__ , 2005.


cc:   The Honorable Arthur J. Schwab

      All Parties of Record

18